MILES MORRIS, administrator, &c., appellant,

*v.*

MARGARET KETTLE, respondent.

1. It is a fundamental doctrine that equity does not assist the recovery of a penalty or forfeiture, or anything in the nature of a forfeiture.

2. Courts of equity have power to reform deeds and other instruments for the correction of mistakes, but to warrant the exercise of the power, the proof, in demonstration of mistakes, must be clear and satisfactory. The courts will not change what is written upon loose, doubtful or equivocal evidence.

3. The proofs in this case fail to show satisfactorily a mutual mistake as to the nature or contents of the deed sought to be reformed.

---

On appeal from a decree advised by Vice-Chancellor Emery, who delivered the following opinion :

Morris v. Kettle.

The bill in this case is filed by a lessee against a lessor to reform the description of the leased premises made in a lease under seal. The leased premises, as described in the lease, are

"the house and premises lying and situate in the city of Jersey City, known or designated as No. 264 Johnson avenue, and all the buildings, outhouses and premises of said place, with the appurtenances."

As appears by the pleadings and proofs, 264 Johnson avenue was a lot about twenty-five feet front and forty feet deep, upon which a house had been built, covering nearly or quite the whole of the lot No. 264. The lower part of the building was occupied as a store or saloon, the two upper stories for dwelling purposes. At the time of the lease Mrs. Kettle owned the lot immediately adjoining No. 264 and on the west of it, which was about twenty feet front by forty feet, and upon which there were then outhouses and buildings which were used by the occupants of the dwellings above the store in No. 264. These outhouses and buildings did not cover the whole of the west lot. Defendant also owned a smaller lot immediately adjoining No. 264 on the east, and about fifteen feet front by fifteen feet deep, and this last lot was, at the time of executing the lease, a vacant lot, unfenced, and, so far as appears by the evidence, not then used by any of the tenants in connection with No. 264. The complainant alleges that he leased from the defendant the whole tract of land and premises, consisting of the house and lot No. 264, the lot to the west containing the buildings and outhouses, and the small lot to the east, and that by an error and mistake of the scrivener who drew the lease the description of the leased premises was, as above stated,

"the house and premises, lying, &c., known and designated as 264 Johnson avenue, and all the buildings, outhouses and premises of said place, with the appurtenances."

The lease was to run for five years from February 1st, 1891, for the yearly rent of $780, payable monthly, and the complainant, who had for some time previous been the lessee of the store

or saloon in No. 264, took possession under the lease of the whole of the house No. 264, and of the lot to the west with the buildings. He alleges, also, that he at once took possession of the lot to the east, but this the defendant denies. I think the evidence establishes that at some time after procuring the lease he closed up the gate leading into the lot on the west of No. 264, and thereafter the access over the lot to the east was substituted for the use of the tenants. The complainant also removed a portion of the surface of the east lot, but it does not appear that the defendant knew of this, or of the use of this lot after the lease by the defendant. The complainant himself occupied the store in No. 264 only two or three months, when he moved into a building of his own, No. 266 Johnson avenue, where he continued to carry on his saloon, renting the building No. 264 to one Mrs. McGuire, but the lease to her, if any was made, is not in evidence.

In February, 1892, the defendant entered into possession of the small lot and put up a small building thereon, which she rented for a saloon. The complainant continued paying the monthly rent ($65) after the erection of this building, until June, 1892, when, as he says, he told her she had broken the lease and he would not pay her any more rent. At this time Mrs. McGuire was the complainant's tenant, and she continued in possession until thirteen months or more afterwards; but the defendant did not accept Mrs. McGuire as her tenant, nor is there any evidence in the case which would justify the conclusion that there was, up to October, 1893, any surrender of the premises agreed on or carried out between the parties to the lease under the doctrine of our courts relating to surrender of leases. *Hunt* v. *Gardner, 10 Vr. 530; Wallace* v. *Kennelly, 18 Vr. 242; Creveling* v. *De Hart, 25 Vr. 338.*

In the meantime and up to October 1st, 1893, the complainant paid no rent, and about October 1st, 1893, the defendant, as alleged in the bill, took possession of the entire premises. This allegation, not being denied or referred to by the answer, must, under the rule laid down in *Sanborn* v. *Adair, 2 Stew. Eq. 338, 345,* be considered as admitted for the purposes of this case, and

it appears by her evidence that defendant is now in possession. In an action at law brought to recover the rent from September 1st, 1892, to October 1st, 1893, the defendant set up the eviction from the small lot as a defence, and in this action parol evidence was introduced without objection, to show that, by the bargain for the lease, the property to be leased was all the property owned there by the defendant. Upon a verdict for defendant herein (the landlord) being rendered for the whole rent, the supreme court, on the application of the present complainant, construed the terms of the lease, describing the leased premises, and held (*Morris* v. *Kettle, 28 Vr. 218, 221*) that, by construction, the words " buildings, outhouses and premises of said place " would embrace the lot on the west side, but that there was nothing in the circumstances or condition of the strip on the east that would make the description in the least apply to that strip. Parol evidence was therefore held inadmissible to affect this construction of the lease by making it extend to all the property defendant owned there. This construction excluding, as matter of law upon the case as then presented, the lot on the east side of No. 264 from the lease, the lessor, by building on it, did not oust the lessee from any portion of the leased premises, and the lessee's defence to the action for rent based on this ground failed. But, inasmuch as the parol evidence had been received without objection, and the lessee therefore had no opportunity of raising on the record the question of the correctness of this decision of the supreme court as to the admissibility of this parol evidence, a new trial was ordered to give him that opportunity. The action at law being again noticed for trial, the complainant filed this bill to reform the deed, asking, in the meantime, an injunction against the suit at law until the lease should be reformed.

The application is based upon parol evidence of the same general character as the evidence held inadmissible by the supreme court. On the rule the supreme court also decided that an eviction from any portion of the premises leased suspended the whole rent until the tenant was restored to the whole possession, even though he still remain in possession of the re-

mainder of the premises leased, following in this respect the decision in *Hunter* v. *Reiley, 14 Vr. 480,* and also declaring that the lease is not avoided by such eviction but the estate in the leased premises continues.    This forfeiture of the whole rent was imposed by the inflexible rule of the common law, and as Chief Baron Gilbert says, " in order that no man be encouraged to injure or disturb his tenant in his possession."    *Gilb. Rents, 173.*    No apportionment of the rent was therefore allowed at the common law, on an eviction by the landlord, no matter what the circumstances of the eviction were, whether under *bona fide* claim of right, under the lease by the lessor or otherwise, and without regard to the proportionate value of the property still retained by the tenant.    On the other hand, where the eviction is by others than the lessor, and under claim of superior right, the rent is apportioned according to the respective value of the premises severed.    *Van Rensellaer* v. *Bradley, 3 Denio 144, 145.*

In the present case, if an apportionment should be made on this basis, the proportion of the rent for the lot on the 'east would be small if not nominal.    The lease having been, so far as the case shows, abandoned by both parties since October 1st, 1893, when the defendant took possession of the entire premises, the only question now at issue between the parties under the lease is the one raised in the action now pending for rent due to October 1st, 1893, and the whole relief which could be given to the complainant in this case, if his claim for reformation of the lease were clear, would be that of restraining the defendant in the action at law from setting up that the premises leased did not comprise the east lot.    See *Firmstone* v. *De Camp, 2 C. E. Gr. 317, 323,* where this was the form of relief adopted in an action on a contract which was reformed.    The result of granting this relief would thus be simply to relieve the complainant from paying any rent whatever under his lease, even for the portion which he occupied or leased to tenants during the time he was out of possession of the small lot, and up to October 1st, 1893.

. The bill itself plainly puts the complainant's case for relief on the sole ground of aiding this defence in the suit at law, and

looking to what seems to be the sole practical result of granting this reformation of the contract, the case must be treated not simply as one involving the question of reformation of contract by a court of equity, but as raising at the outset the preliminary question whether the case does not come within the reason and application of the rule that a court of equity will not give any assistance in aid of enforcing a forfeiture. In reference to forfeitures the settled doctrine of equity is, to use the language of Chancellor Kent, in *Livingston* v. *Tompkins, 4 Johns. Ch. 415, 431,* that "it may be laid down as a fundamental doctrine of the court that equity does not assist the recovery of a penalty or forfeiture, or anything in the nature of a forfeiture." See, also, *1 Pom. Eq. Jur.* § *459,* and cases cited. The general doctrine is unquestionable, and the only question is as to its application to this case.

The complainant seeks an equitable relief—that of reforming the description of the premises in a lease—not for the purpose of continuing, or as connected with the continuance of the leasehold estate in the premises, now included or to be included in the lease for the bill, and the evidence shows that as long ago as October 1st, 1893, the lessor took possession of the entire premises and the term of the lease has now expired. The bill does not dispute the complainant's acquiescence in this possession from October 1st, 1893, up to the filing of his bill, March 13th, 1895, or make any claim that it is wrongful or against the complainant's will. Under these circumstances, on this bill no decree should be made reforming the lease, on the basis that the leasehold is a continuing estate, in any portion of the premises, nor was it filed in that view. It was filed solely in aid of the defence at law, and in order to secure an amendment of the lease, which will clearly include the small lot from which he claims to have been evicted, and enable him thus to make out the defence of eviction at law, under which he may be released from the payment of any rent whatever for the remainder of the premises during the time he occupied them, or would otherwise be responsible for their rent. He is defendant in the action at law, it is true, but he is a defendant setting up a defence which is,

under the circumstances of this case, practically the enforcement of a forfeiture, and in applying to this court for its aid in reforming the lease, the substantial rather than the formal situation of the complainant should be regarded.

The bill in this case makes no offer to pay any portion of the rent, neither does it allege any facts showing any equitable grounds for relieving complainant from the payment of rent for the premises actually occupied by him or his tenants. As compared with the residue of the premises, the small lot was but an insignificant or very small portion of the whole premises, and the evidence of the complainant shows that his objection to paying rent was not because this alleged eviction from the small lot interfered with the enjoyment of the leased premises, but because it was occupied for saloon purposes, and this injured his own business carried on on other premises owned by him. The complainant says, it is true, that his reason for taking the defendant's property was that he might control it and prevent the location of another saloon on any portion of it, but although he now says this was his idea in leasing, there is no evidence that he said anything to defendant about those reasons, or that they formed as between the parties any basis upon which the contract of lease was made, so that there is nothing in the bill or evidence to show that the defendant was not equitably entitled to at least an apportionment of the rent. The case seems to me to be one where this court should not, by now changing the actual lease signed, assist the complainant in making out his defence of forfeiture of the whole rent by eviction. The rent for the portion occupied by the complainant or his tenants during the time sued for appears to be equitably due to the defendant, and this court, therefore, in the absence of any offer in the bill to pay this amount (1) and in the absence of any allegations or proofs relieving him from this equitable obligation, will leave complainant to his legal remedies and defences; (2) if this application of the principle relating to forfeitures and penalties should be erroneous and the case be considered on the merits, the complainant's case is still not such as to entitle him to a reformation of the lease.

Morris v. Kettle.

The evidence of the complainant and of the scrivener tends to show that the words " and premises " were inserted in the deed after the word " outhouses " at the instance of complainant, and after consultation between him and the scrivener, and that these words were selected because they both then thought, as they now say, that these words would include all the property there of the defendant. The defendant was an ignorant woman, unable either to read or write, and had nothing to do with the selection of the phrase, nor does it appear clearly that she was consulted about it. There is no question upon complainant's own evidence that the real mistake sought to be relieved against is not that the lease as drawn did not contain in this particular the precise agreement which the parties intended it should contain for the purpose of carrying out their alleged previous parol agreement, but that the expression or phrase in the written contract intentionally adopted for the purpose of carrying this alleged previous intention did not do so. Such a mistake would seem to be a clear mistake of law as to the construction of a written contract, and therefore to come within the class of cases which the court of equity does not generally relieve against. Chancellor Kent, in *Gillespie* v. *Moon, 2 Johns. Ch. 585, 596,* thus limits the jurisdiction in equity : " It has been the constant language of the courts of equity that parties can have relief on a contract founded in mistake as well as in fraud. The rule in the courts of law is that the written instrument does, in contemplation of law, contain the true agreement of the parties, and that the writing furnishes better evidence of the sense of the parties than any that can be supplied by parol. But equity has a broader jurisdiction, and will open the written contract to let in an equity arising from facts perfectly distinct from the sense and construction of the instrument itself. ' It must be an essential ingredient,' says Lord Thurlow (*1 Bro. Ch. C. 350*), ' to any relief under this head, that it should be an accident perfectly distinct from the sense of the instrument.' " I have not been referred by counsel to any case in our courts or elsewhere in which such mistake in law, in reference to the sense or construction of the written agreement as is here alleged, has been cor-

rected by parol evidence of the previous intention of the parties. To reform a contract in this respect is clearly to make a new written contract, and to do this in the present case would seem to extend the jurisdiction for reformation to any case in which the sense or construction of the contract is disputed by parol evidence of the construction the parties intend to put on the contract. This would clearly be the effect unless a mistake in law as to the description of the premises conveyed is to be considered as an exception to the general rule above stated.

Upon the question of the admissibility of parol evidence to give the complainant an interest in the lands not covered by the written lease, it must be further observed that such evidence is expressly excluded by the statute for the prevention of fraud and perjuries. *Rev. p. 444.* Fraud on the part of defendant, or some other equitable ground, must be alleged and clearly proved in order to bring the case within any of the exceptions to the statute recognized by courts of equity. No such equitable grounds are shown here, and the case seems therefore to come within the rule laid down in the court of errors and appeals, in *Conover* v. *Wardell, 7 C. E. Gr. 492,* that parol evidence of the intention of the parties is inadmissible. This was a case in equity, on a bill filed to correct a deed for an alleged mistake in the construction put on the terms used to describe the lands conveyed (see *p. 499*). But, without disposing of this case upon either of the above objections relating to the admission of parol evidence to correct a mistake of the character here alleged, and on the basis of admitting the parol evidence relating to the alleged mistake, I am satisfied relief must be denied because the fact of mistake by both parties has not been made out so clearly and conclusively as is required by our courts on application to correct written instruments. That a high grade of evidence is required is recognized in all our decisions upon the subject; and, as was said by Vice-Chancellor Van Fleet, the courts will not change what is written upon loose, doubtful or equivocal evidence. *Hendrickson* v. *Wallace, 4 Stew. Eq. 607.*

The words "and premises," as used, have a clear application to the west lot upon which the buildings and outhouses were

Morris *v.* Kettle.

situate, and this west lot, or the whole of it, might not have passed merely by the words "buildings" or "outhouses," so that the addition of these words would be appropriate, if nothing more than the west lot was in contemplation. But whether they were intended by the defendant at least, to include the east lot also, would depend largely, as it seems to me, on the question whether this east lot was at the time expressly called to her attention during the negotiation. It appears from the testimony of all the witnesses, including complainant, that the east lot was not expressly mentioned and the complainant's claim that it was included is based only on his statement that the defendant agreed to lease him all her property. But as the complainant was, at the time of the negotiations, occupying a portion of the house No. 264, the leasing of the whole place or property or even of all defendant's property might well, in the negotiation, be understood by the defendant to refer to the whole of No. 264, which was used with it, which would include the west lot but not the east. And inasmuch as the east lot was not then used with No. 264 and the lot on the west, the defendant ought not to be compelled by the court of equity now to include it in the lease (if it was not in fact included), except upon clear proof that the leasing of this lot was specially brought to her attention and was in her mind, as well as that of the complainant, at the time of the execution of the lease. The mere proof of general expressions during the negotiations as to leasing all her property, or all her property there, is not, under the circumstances of this case, and in view of the defendant's denials under oath in her answer, sufficient basis for changing this written lease so as to include any property not within the description.

I will advise a decree dismissing the bill, with costs.

*Mr. James J. Murphy,* for the appellant.

*Mr. Marshal Van Winkle,* for the responde it.

PER CURIAM.

Decree affirmed, for the reasons given in the court of chancery.

*For affirmance*—DEPUE, DIXON, GARRISON, GUMMERE, LIP-
PINCOTT, MAGIE, VAN SYCKEL, BARKALOW, BOGERT, DAYTON,
HENDRICKSON, KRUEGER, NIXON—13.

*For reversal*—None.